IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-00031-CMA-NYW

BRIAN ROD DESIZLETS,

  Plaintiff,

v.

GEICO CASUALTY COMPANY,

  Defendant.

---

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERT WITNESS DALE CRAWFORD

---

This matter is before the Court on Defendant GEICO Casualty Company's Motion to Strike Plaintiff's Expert Witness Dale Crawford. (Doc. # 90.) For the reasons outlined below, the Court grants in part and reserves ruling on the remainder of Defendant's Motion to Strike.

### I. BACKGROUND

The Court detailed the factual background of this case in its Order Denying Defendant's Motion for Summary Judgment. (Doc. # 89.) That Order is incorporated by reference, and the facts explained therein need not be repeated. The Court recounts only the facts necessary to address Defendant's instant Motion to Strike.

As the Court explained in its summary judgment order, the resolution of this case will turn on whether Plaintiff Brian Rod Desizlets' insurance policy was in effect at the

time of a motor vehicle collision at approximately 4:00 PM on February 25, 2013. *See* (*id.* at 5.) Plaintiff asserts that he made payment sufficient to reinstate coverage at 9:23 AM on the morning of the accident through Defendant's automated phone system. (Doc. # 82 at 2–3.) He cites his credit card statement and deposition testimony of bank employees and Defendant's employees as evidence. (*Id.* at 4–11.) Defendant counters that Plaintiff did not have insurance coverage at the time of the accident, relying on its own records, Plaintiff's bank statements, and other documents to show that Plaintiff made a preauthorization payment on 4:27 PM on the day of the accident— after the accident occurred at approximately 4:00 PM. (Doc. # 68 at 31.) Defendant contends that any record of 9:23 AM pertains to 9:23 AM on February 27, 2013, two days after the collision, when Plaintiff's payment was allegedly processed and completed. (*Id.*)

Plaintiff retained Dale Crawford as a "consulting expert in the area of property and casualty insurance and reinsurance" to testify that "upon receipt of the insurance premium, it is the usual and customary practice of the insurance to bind coverage at that time." (Doc. # 90-1.) Plaintiff disclosed Crawford as a retained expert witness to Defendant on July 7, 2017, (*id.*), and attached his expert report, (Doc. # 90-2.) Relevant here, Crawford opined that Plaintiff's credit card statement shows that he made an electronic payment to Defendant on the morning of the accident. (*Id.* at 6.) "The electronic records and information regarding time zones establish without a doubt that [Plaintiff] made a payment to [Defendant] several hours before the Accident occurred," Crawford wrote. (*Id.* at 10.) Crawford concluded that:

> [T]he investigation by [Defendant] was inadequate, resulting in the lack of defense and subsequent default judgment against [Plaintiff]. Furthermore, upon presentation of undisputed evidence of payment having been made prior to the Accident, [Defendant] had an obligation to acknowledge coverage and respond to the request for resolution of the default judgment against [Plaintiff].

(*Id.* at 10.) Plaintiff also designated Crawford as a rebuttal expert witness, (Doc. # 90-3), and submitted Crawford's rebuttal report, (Doc. # 90-4).

Defendant filed the Motion to Strike now before the Court on March 1, 2018. (Doc. # 90.) Plaintiff filed a Response in opposition to Defendant's Motion on March 14, 2018, (Doc. # 91), to which Defendant replied on March 28, 2018, (Doc. # 92).

## II. <u>LEGAL STANDARD</u>

Under *Daubert*, the trial court acts as a "gatekeeper" by reviewing a proffered expert opinion for relevance pursuant to Federal Rule of Evidence 401, and reliability pursuant to Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–95 (1993); *see also Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The proponent of the expert must demonstrate by a preponderance of the evidence that the expert's testimony and opinion are admissible. *United States v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009)*; United States v. Crabbe*, F. Supp. 2d 1217, 1220–21 (D. Colo. 2008); F.R.E. 702 advisory comm. notes. This Court has discretion to evaluate whether an expert is helpful, qualified, and reliable under Rule 702. *See Goebel*, 214 F.3d at 1087; *United States v. Velarde*, 214 F.3d 1204, 1208–09 (10th Cir. 2000).

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that a witness who is qualified as an expert by "knowledge, skill,

3

experience, training, or education" may testify if:

>   (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>   (b)  the testimony is based on sufficient facts or data;
>   (c)  the testimony is the product of reliable principles and methods; and
>   (d)  the expert has reliably applied the principles and methods to the facts of the case.

F.R.E. 702.

In deciding whether expert testimony is admissible, the Court must make multiple determinations. First, it must first determine whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. *Nacchio*, 555 F.3d at 124. Second, if the expert is sufficiently qualified, the Court must determine whether the proposed testimony is sufficiently "relevant to the task at hand," such that it "logically advances a material aspect of the case." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884, 884 n.2 (10th Cir. 2005).

Third, the Court examines whether the expert's opinion "has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Id.* (quoting *Daubert*, 509 U.S. at 592). In determining reliability, a district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* (quoting *Daubert*, 509 U.S. at 592–93). In making this determination, a court may consider: "(1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has general acceptance." *Norris*, 397 F.3d at 884 (citing *Daubert*, 509 U.S. at 593–94).

The Supreme Court has made clear that this list is neither definitive nor exhaustive. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). In short, "[p]roposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590.

The requirement that testimony must be reliable does **not** mean that the party offering such testimony must prove "that the expert is indisputably correct." *Bitler v. A.O. Smith Corp.,* 400 F.3d 1227, 1233 (10th Cir. 2004) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)). Rather, the party need only prove that "the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.* Guided by these principles, this Court has "broad discretion" to evaluate whether an expert is helpful, qualified, and reliable under the "flexible" standard of F.R.E. 702. *Velarde*, 214 F.3d at 1208–09; *Daubert*, 509 U.S. at 594.

### III. <u>ANALYSIS</u>

Defendant disputes the reliability of Crawford's opinions, arguing that Crawford "failed to consider significant evidence, [and] instead rel[ied] upon speculative evidence and his own misinterpretation of the evidence." (Doc. # 90 at 6–12.) Specifically, Defendant asserts that Crawford did not review "Plaintiff's own deposition, the depositions of [Defendant]'s Rule 30(b)(6) representatives, or the deposition of [William Braunsroth,] the bank representative who is most knowledgeable with regard to the bank's records and practices." (*Id.* at 10.) Crawford's opinions were "based on nothing more than a statement by a bank representative with insufficient knowledge of the

5

bank's records and his own misinterpretation of Plaintiff's bank statement," according to Defendant. (*Id.*)

Plaintiff counters that Crawford's opinions were based on a sound methodology. (Doc. # 91 at 6.) First, Plaintiff clarifies that Crawford was retained to "review the actions of [Defendant] and opine on the administration of [Plaintiff's] claim" and that "Crawford is not being endorsed . . . as an expert in banking, computer, or software technology." (*Id.* at 4.) Second, with regard to the evidence Crawford considered, Plaintiff faults Defendant for the "paucity" of its "internal recording keeping of its automated payment process" and states that Braunsroth's deposition testimony is "extremely confusing at best." (*Id.* at 6.) "Arguably a review of Braunsroth's deposition testimony by Crawford would not have yielded any alternative opinions on Crawford's part," Plaintiff continues, "and would in fact merely [have] served to further confuse the matters." (*Id.*) Plaintiff argues that it was therefore entirely appropriate for Crawford to base "the majority of his opinions on his review of [Plaintiff's] bank statement." (*Id.* at 7.)

The Court concludes that Crawford's opinions based on Plaintiff's credit card statement issued by the bank are unreliable and must be stricken. The correct interpretation of the statement is critical to this dispute, as it may be the only evidence of at what time on February 25, 2013, Plaintiff called Defendant's automated line and paid to reinstate his insurance coverage. Crawford's answer to that question is not fully informed however. The bank designated Braunsroth as its Rule 30(b)(6) representative to testify about the statements it issued and its payment processes, *see* (Doc. # 92 at 2), yet Crawford did not review Braunsroth's affidavit—despite reading that another

bank employee, Karen Scott, had stated that Braunsroth was most knowledgeable about debit card processing, *see* (Doc. # 90-5 at 13). Crawford acknowledged that he did not know whether Braunsroth's affidavit substantiated or contradicted his interpretation of the bank statement. (*Id.* at 5–6.) Crawford's failure to consider all evidence is particularly troubling given that Crawford is not an expert in banking. Plaintiff himself concedes that Crawford's expertise stems from his previous work in the property-casualty insurance industry and that "Crawford is not being endorsed . . . as an expert in **banking**, computer, or software technology." (*Id*. at 4) (emphasis added). The Court therefore concludes that Crawford's interpretation of the bank statement and opinions derived there from are not reliable. Crawford's opinions related to the bank statement are therefore inadmissible pursuant to Rule 702.

Crawford's expert report (Doc. # 90-2) also contains opinions about insurance industry standards that are not specific to this case. *See* (Doc. # 90-2 at 7–9.) The Court reserves ruling on the admissibility of these opinions until trial.

### IV. <u>CONCLUSION</u>

Accordingly, the Court ORDERS as follows:

1. Defendant's Motion to Strike (Doc. # 90) is GRANTED IN PART as to Crawford's opinions regarding the bank statement.

2. The Court reserves ruling on Defendant's Motion to Strike (Doc. # 90) Crawford's testimony about insurance industry standards.

DATED: April 9, 2018

BY THE COURT:

*Christine M Arguello*
_____
CHRISTINE M. ARGUELLO
United States District Judge